A03A0247. WEISS v. OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY et al.
(584 SE2d 710)

JOHNSON, Presiding Judge.

This appeal raises the following issues regarding a sale of real property: whether the seller breached the warranty of title contained in a general warranty deed, whether the seller is liable to a subsequent purchaser for that breach months later even though a sales contract gave the purchaser only 30 days to object to the marketability of title, and whether there was a valid and enforceable title insurance policy. We answer each question in the affirmative, and uphold the trial court's grant of summary judgment to the purchasers and their title insurance provider as subrogee.

Old Republic National Title Insurance Company, Gregory Griffin, and J & M Family, L.P. (collectively, "Old Republic") filed a complaint against Arthur Weiss based on Weiss' alleged breach of war-

---

ranty of title to real property. Both Old Republic and Weiss filed motions for summary judgment. The trial court granted Old Republic's motion for summary judgment and denied Weiss' motion. This appeal follows.

In May and July 1985, Weiss and Malcolm Dunlevie received by warranty deeds three adjoining tracts of land. In February 1986, Weiss and Dunlevie entered into a contract to sell the tracts to Westmark Corporation. The sales contract, which was signed on Westmark's behalf by the corporation's president, A. F. Hallman, contained a description of the property that combined the three tracts into one property. Before the transaction closed, Hallman, along with Jean Johnson and Griffin, agreed orally to buy the property from Westmark.[1] Rather than having two separate transactions in which Westmark would purchase the property from Weiss and Dunlevie and then sell it to Hallman, Johnson, and Griffin, the parties agreed that at closing Weiss and Dunlevie would convey the land directly to Hallman, Johnson, and Griffin.

The sales transaction closed on May 15, 1986. At that time, Weiss and Dunlevie (hereinafter, "Weiss") gave Hallman, Johnson, and Griffin a general warranty deed to the property. The deed provided that the grantors "will warrant and forever defend the right and title to the above described property unto the said Grantee against the claims of all persons whomsoever." The warranty deed contained the same legal description of the property as was contained in the sales agreement.

On May 16, 1986, Old Republic National Title Insurance Company ("the title insurance company") issued a policy of title insurance to Hallman, Johnson, and Griffin on the property. On July 8, 1988, Hallman conveyed his interest in the property to Johnson and Griffin by warranty deed. In 1998, Johnson and Griffin improved the property by erecting on one corner of the lot an advertising billboard which they subsequently rented for profit.

On January 26, 1999, Johnson conveyed his interest in the property to J & M Family, L.P. by quitclaim deed. As a result of the conveyance of Johnson to J & M Family, L.P., Griffin and J & M Family, L.P. became the insureds under the title insurance policy.

In March 2000, a boundary line dispute arose between the adjacent property owner, James Freeman, and Griffin and J & M Family, L.P. Griffin and J & M Family, L.P. filed a claim with the title insurance company concerning the section of property in dispute. A title search revealed that Freeman did in fact own 0.594 acres of the land which was insured under the policy and conveyed by Weiss in the

---

[1] It is not clear from the record what relationship Johnson and Griffin bore to Westmark Corporation.

warranty deed. The title insurance company determined that Griffin and J & M Family, L.P. sustained a loss of $38,610, which represented the difference between the value of the property as described in the deed and the value of the property without the 0.594 acres owned by Freeman.

On November 8, 2000, Griffin, J & M Family, L.P., and the title insurance company entered into a settlement and release agreement in which the title insurance company paid Griffin and J & M Family, L.P. for the loss of title to the property in the amount of $38,610. Pursuant to the settlement and release agreement, the title insurance company became subrogated to the rights and remedies of its insureds for the losses resulting from the breach of warranty of title in the warranty deed.

Upon discovering that he did in fact own the 0.594 acres on which the billboard had been erected, Freeman made a claim of title to the property and a claim for all rent and profits against Griffin and J & M Family, L.P. In order to settle Freeman's claim to ownership of the disputed property, Old Republic paid Freeman $25,000 cash and conveyed to him by limited warranty deed 1.835 acres which had a fair market value of $174,325. The conveyance of the 1.835 acres by limited warranty deed and $25,000 cash also settled Freeman's claim for revenue from the billboard which had been erected on his property. Claiming it suffered an economic loss of about $120,000, Old Republic sued Weiss for breaching the warranty of title in the warranty deed.

1. Weiss contends the trial court erred in granting summary judgment to Old Republic when it waived any objections to title by not objecting to the marketability of the title within 30 days of the date the sales contract was executed. We disagree.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[2] A de novo standard of review applies to an appeal from a grant of summary judgment, and the evidence, and all reasonable conclusions and inferences drawn from it, are reviewed in the light most favorable to the nonmovant.[3]

As the trial court found and the undisputed facts show, Weiss breached the warranty of title contained in the warranty deed. In a suit for breach of warranty of title, the burden is on the plaintiff to show eviction or that which amounts to an eviction or an outstanding paramount title which he was obliged to yield to a third person.[4] Old Republic met this burden.

---

[2] *Mooney v. Mooney*, 245 Ga. App. 780 (538 SE2d 864) (2000).
[3] Id.
[4] *McMullen v. Butler & Co.*, 117 Ga. 845, 846-847 (1) (45 SE 258) (1903); *Rowan v. Newbern*, 32 Ga. App. 363 (2) (123 SE 148) (1924).

A general warranty of title is a covenant against the valid claims of all persons, and includes covenants of freedom from encumbrances.[5] A grantor's liability depends upon the covenants in the deed itself, and if those covenants run with the land, they pass to the subsequent grantee or purchaser the same rights that he would have had if the deed with the covenants had been given directly to the subsequent grantee or purchaser.[6] The warranty of title contained in a warranty deed is a covenant that runs with the land.[7] Therefore, the purchaser of land obtains with the title all the rights which any former owner of the land under whom he claims may have had by virtue of any covenants of warranty of title from any former grantor, unless the transmission of such covenants with the land is expressly prohibited by the covenant itself.[8]

Weiss conveyed the property to Hallman, Johnson, and Griffin by warranty deed. In the warranty deed, Weiss promised to "forever defend the right and title" to the property "against the claims of all persons whomsoever." The property described in the warranty deed included 0.594 acres that were vested in the adjacent property owner. Upon determining that Weiss did not hold title, Griffin and J & M Family, L.P. gave up possession of the land to Freeman. As a result of the loss of property by Griffin and J & M Family, L.P., the title insurance company paid Griffin and J & M Family, L.P. $38,610. Yielding title to property to a paramount title amounts to an eviction and constitutes a breach of warranty and would authorize the recovery for such breach.[9] Therefore, Weiss' conveyance of the 0.594 acres vested in and owned by Freeman constituted a breach of the warranty of title in the warranty deed. The trial court correctly found that, as a matter of law, Weiss breached the warranty of title in the warranty deed as to Griffin and J & M Family, L.P.

Weiss contends that Griffin and J & M Family, L.P. waived their right to assert a claim for breach of warranty of title by not filing a written objection to the marketability of the title within 30 days of the date of the sales agreement. Weiss relies upon the following provision in the sales contract:

> Purchaser shall have thirty (30) days after the effective date of this Agreement in which to examine title and in which to furnish Seller with a written statement of objections affecting the marketability of said title.

---

[5] See OCGA § 44-5-62; *Benton v. Gaudry*, 230 Ga. App. 373, 374-375 (2) (496 SE2d 507) (1998); *Northside Title &c. Co. v. Simmons*, 200 Ga. App. 892 (409 SE2d 885) (1991).

[6] See *Benton*, supra; *Redwine v. Brown*, 10 Ga. 311 (1851).

[7] *Redwine*, supra at hn. 4; *Tucker v. McArthur*, 103 Ga. 409, 415 (30 SE 283) (1897).

[8] OCGA § 44-5-60; *Long v. Sullivan*, 52 Ga. App. 318, 319-320 (1) (183 SE 71) (1935).

[9] *Rowan*, supra at 364; *Lowery v. Yawn*, 111 Ga. 61, 63-64 (1) (36 SE 294) (1900).

Weiss adds that a proper title search would have revealed the error in the property's legal description.

Paragraph 24 of the sales contract upon which Weiss relies provides that no provisions of the contract shall survive closing, except for certain, specified provisions which are inapplicable to the issues raised on appeal. The title objection provision, therefore, did not survive the closing.[10] After the closing, the provisions of the warranty deed superseded any time limitations regarding objections to title contained in the sales agreement. Weiss expressly warranted in the deed, executed three months after the sales agreement was effective, that he would *forever* defend the right and title to the property to Hallman, Johnson, and Griffin. It is the warranty deed, rather than the sales contract, that makes Weiss liable.

Moreover, we point out that Griffin and J & M Family, L.P. were not parties to the sales contract with Weiss. Rather, after the sales contract was executed, Hallman, Johnson, and Griffin entered into a separate oral agreement with Westmark Corporation to purchase the property.

And, as the trial court found, there is no evidence that a title search on the subject property alone would have revealed the incorrect property description. The record does contain an affidavit from an agent for the title insurance company showing that a title examination was performed on *both* the subject property and the adjacent property owned by Freeman. It was determined, based on the searches of these *two* chains of title, that the adjacent property owner, Freeman, owned the disputed area. We note that the legal description in the warranty deed in dispute was created from a combination of deeds and was not a legal description within the chain of title of the property. Thus, a title search of these deeds would not have necessarily given Griffin and J & M Family, L.P. notice of any error in the legal description of the property.

Weiss had the burden of showing that Griffin and J & M Family, L.P. waived their right voluntarily and with knowledge of the right being waived.[11] Griffin and J & M Family, L.P. had no knowledge of the incorrect property description in either the sales contract or the warranty deed, and they were not subject to the limited examination period set forth in the sales contract.

Weiss urges that Griffin and J & M Family, L.P. are "hiding behind their shell corporation." However, Weiss has not shown this by the record. In any event, Weiss executed a warranty of title in the warranty deed of the property which runs with the land, and if Weiss

---

[10] See *Savage v. KGE Assoc.*, 260 Ga. App. 770 (580 SE2d 591) (2003).
[11] See *Brock v. Allen*, 256 Ga. App. 397, 401 (3) (568 SE2d 536) (2002).

had desired to prevent such liability, he could merely have omitted such a covenant from the deed or executed another type of deed.[12]

2. Based on the foregoing, the trial court did not err in denying Weiss' cross-motion for summary judgment based on waiver.

3. Nor did the trial court err in granting Old Republic's motion for summary judgment based on Weiss' argument that there was no valid and enforceable title insurance policy.

Weiss argues that there is a genuine issue of material fact with respect to whether there was a valid and enforceable title insurance policy, as the record contains no evidence showing that a valid and enforceable title insurance policy exists. We point out that it is an undisputed fact, previously acknowledged by Weiss and supported by the agent of the title insurance company, that a title policy was issued to J & M Family, L.P. and Griffin. Moreover, the pertinent portion of the valid title insurance policy is of record which specifically shows the insureds' names, policy number, and policy amount, and contains the signature of the authorizing agent. The evidence supports the claim that there is a valid enforceable title insurance policy.

The trial court did not err in granting summary judgment to Old Republic.

*Judgment affirmed. Eldridge and Mikell, JJ., concur.*

DECIDED JULY 3, 2003.

*Paul, Hastings, Janofsky & Walker, John G. Parker, Brady S. McFalls, Greenberg Traurig, Nicole L. Day,* for appellant.

*Heyman & Sizemore, William B. Brown, Jacqueline Marcucci,* for appellees.

---

[12] See *Long,* supra at 321 (3).